SLIP OPINION



Cite as 2014 Ark. App. 552

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-452

| | |
|---|---|
| ROBERTO JARAMILLO, EMPLOYEE<br>APPELLANT<br><br>V.<br><br>SYSTEMS CONTRACTING<br>APPELLEE | **Opinion Delivered** October 22, 2014<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G006583]<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Roberto Jaramillo appeals from the January 21, 2014 decision of the Arkansas Workers' Compensation Commission that reversed and dismissed the September 18, 2013 opinion of the Administrative Law Judge (ALJ) and found that appellant failed to establish by a preponderance of the evidence that his umbilical hernia is the compensable consequence of a work-related incident of September 7, 2008.[1]  Appellant argues that the Commission again erred in finding that he failed to prove that he suffered a compensable injury and in finding that appellee Systems Contracting is not responsible for workers' compensation benefits associated therewith.  We find no error and affirm.

---

[1]On March 7, 2012, this court affirmed the July 11, 2011 decision of the Commission that reversed the March 9, 2011 opinion of the ALJ and found that appellant failed to establish by a preponderance of the evidence that he sustained a compensable injury to his back, neck, ribs, knees, or left shoulder as a result of the same incident at issue here.  The issue of compensability of appellant's umbilical hernia was specifically reserved by agreement of the parties.  *See Jaramillo v. Sys. Contracting*, 2012 Ark. App. 200.

On September 7, 2008, appellant fell at work when a forklift swung a heavy pipe into his feet, knocking him backwards. Appellant maintains that when he reported this incident to his supervisor, he was placed on light duty. Appellant denies that he was ever offered medical treatment by appellee and claims that he could not seek contemporaneous medical treatment because a lay-off shortly after the incident caused him to lose his private health insurance.

The record reveals that appellant first sought medical treatment for his alleged injury on August 4, 2009. Records from the Regional Medical Center at Memphis reveal that he reported to the emergency room on that date, complaining of chest, abdomen, and pelvic pain. An emergency room triage report indicates that appellant reported injuring his left shoulder six months earlier as the result of a work-related accident. Numerous diagnostic studies taken during appellant's brief hospital stay showed no acute findings in appellant's pelvic, abdominal, or chest areas. Observed by these studies, however, were the following chronic conditions: cardiomegaly with left-ventricular hypertrophy; cholelithiasis without evidence of cholecystitis; and, diverticulosis without evidence of diverticulitis. Further, a small umbilical hernia comprised of fatty tissue was noted. Appellant's discharge instructions, dated August 5, 2009, reveal that he was instructed to follow-up with the surgery center for a consultation in two weeks concerning elective hernia-repair surgery.

Appellant maintains that he was discharged by appellee following his August 4, 2009 trip to the emergency room. Appellant agreed, however, that he worked for appellee after the September 7, 2008 incident up until that time, subject to periods of lay-off.

2

The record reflects that appellant returned to the Regional Medical Center Medplex clinic on September 3, 2009. Notes from that encounter indicate that appellant presented with complaints of intermittent, sharp, stabbing, abdominal pain. These notes also show that appellant's umbilical hernia was small, non-tender to palpation, and "always reducible." Appellant was instructed to lose weight, then return to the Medplex clinic in two-to-three months for further surgical evaluation. In the meantime, appellant was advised to seek medical attention if his hernia became irreducible or painful, or if he became symptomatic. Appellant also was scheduled for an evaluation with a urologist.

A Medplex clinic note dated November 12, 2009, shows that appellant was assessed with a testicular mass in addition to his hernia. Upon his January 19, 2010 follow-up appointment at the Medplex clinic, it was noted that he would need a referral from a primary-care provider for his urology appointment. A clinic note dated March 25, 2010, shows that appellant was scheduled at the GT clinic for a colonoscopy on April 20, 2010. The report of that study reflects that appellant's colonoscopy confirmed the presence of diverticulosis in his descending colon, as well as multiple, small hyperplastic rectal polyps.

Notes from the Medplex clinic dated April 27, 2010, reflect that appellant still complained of chronic pain, which his examining physician, Dr. Henry, described as "vague and diffuse in distribution."

On June 4, 2010, appellant presented to the emergency room of St. Bernard's Medical Center for chronic neck and back pain. Corresponding medical records reflect that he was prescribed methocarbanol, prednisone, and tramadol, and instructed to follow-up in clinic.

During the hearing before the Commission on June 21, 2013, appellant testified that when the metal pipe struck his work boots from behind, he flipped in the air then slammed down shoulder first onto the concrete floor. Appellant stated that he experienced an immediate sensation upon impact, like water running in his body. In spite of medical reports indicating that his hernia was asymptomatic as of August 4, 2009, and probably preexisting, appellant alleges that all of his physical complaints, including pain in his abdomen, began on September 7, 2008. Appellant stated that he still experiences constant pain in his shoulders and neck, as well as pain in his feet.

According to appellant, this combined pain prevents him from working. He attributes "four or five open areas in his body" to two ribs he says were broken in the September 2008 accident, in spite of the fact that diagnostic studies have repeatedly failed to show acute findings in his shoulder, abdomen, neck, or elsewhere. Appellant also claims to have out–of–place discs in his back due to this incident. Finally, he believes that his enlarged heart resulted from the close proximity of his broken ribs to his heart.

The ALJ filed an opinion on September 18, 2013, finding that appellant proved that his umbilical hernia is the compensable consequence of the work-related incident of September 7, 2008, but the Commission reversed the ALJ decision in its January 21, 2014 opinion. The Commission found that appellant failed to prove by a preponderance of the evidence that his hernia resulted from the work-related incident of September 7, 2008.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the

SLIP OPINION

findings of the Commission, and we affirm that decision if it is supported by substantial evidence. *Kimble v. Labor Force, Inc.*, 2013 Ark. App. 601, 430 S.W.3d 156. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* It is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Id.*

Arkansas Code Annotated section 11–9–523(a) (Repl. 2002) provides:

(a) In all cases of claims for hernia, it shall be shown to the satisfaction of the Workers' Compensation Commission:
(1) That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;
(2) That there was severe pain in the hernial region;
(3) That the pain caused the employee to cease work immediately;
(4) That notice of the occurrence was given to the employer within forty-eight (48) hours thereafter; and,
(5) That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within seventy-two (72) hours after the occurrence.

The Commission noted that, in adults, excessive abdominal pressure can cause an umbilical hernia. Accordingly, obesity is a common cause of umbilical hernias in adults. The Commission also noted appellant's own admission that he is a "very heavy" adult and that his weight attributed to a delay in the surgical repair of his umbilical hernia.

The Commission based its decision that appellant failed to prove that his umbilical hernia was a compensable injury on several aspects of section 11-9-523(a). First, the occurrence of the hernia must have immediately followed the alleged accident "as the result

of sudden effort, severe strain, or the application of force directly to the abdominal wall." The Commission disagreed with the ALJ's finding that appellant, who weighed at or above 287 pounds, was "flipped in the air and landed on a concrete surface floor, after being struck from behind by a pipe on forklift." Although appellant was morbidly obese at the time of his accident, we agree with the Commission that the broad assumption by the ALJ does not satisfy the requirements of section 11-9-523. Other than his own self-serving testimony, appellant provided no clear proof of the exact mechanics of his fall or the amount of force exerted when his shoulder connected with the floor. Moreover, appellant testified that he fell on his neck and shoulder—no reference was made regarding force applied directly to appellant's abdominal wall. Further, none of his treating physicians opined that the hernia was caused by an acute, work-related accident. It does not necessarily follow that a fall by someone obese automatically results in a hernia.

Because appellant waited several months before seeking medical attention for his alleged, work-related injury, the record is devoid of credible, objective medical proof to substantiate that his hernia resulted from his fall at work on September 7, 2008. Diagnostic testing conducted at Regional Medical Center at Memphis in August 2009 revealed no acute findings. Moreover, appellant did not present to the emergency room at that time with abdominal complaints; instead, he reported only that he hurt his left shoulder when he fell at work almost a year earlier.

Appellant's abdominal CT scan did confirm, among other conditions, an umbilical hernia consisting of fatty tissue, for which his physician recommended he be assessed for

6

elective surgery following his discharge from the hospital. However, appellant's August 5, 2009 discharge summary clearly indicates that he suffered from "no acute injury." There is also no indication from these medical records that appellant's hernia was symptomatic at that time.

Accordingly, we affirm the Commission's finding that appellant failed to satisfy the statutory requirement that he prove that the occurrence of his hernia immediately followed his accident, specifically as the result of the application of force directly to his abdominal wall. The Commission found that the weight of the credible evidence, including the medical records, shows that in the course of testing for acute injuries associated with his fall of September 2008, emergency medical staff discovered that appellant suffered from several chronic conditions, including the umbilical hernia at issue in this appeal.

Although appellant reported that his physical distress following the alleged occurrence of his hernia was such as to require the attendance of a licensed physician within seventy-two hours after the occurrence, as required by the statute, the undisputable fact is that he did not seek medical treatment for almost a year following the accident. During that time, appellant continued to work for appellee, subject to periods of lay-off, without any medical assistance for ten more months, seven days a week and for ten-to-twelve hours a day.

We agree with the Commission's finding that appellant's medical records do not support that his hernia-related symptoms are debilitating in the sense anticipated by Arkansas Code Annotated section 11-9-523(a)(5). Reasonable minds can safely conclude that had

appellant suffered a hernia injury as anticipated by our statute, he would have neither continued to work for the next ten months nor delayed medical treatment during that time.

Based upon this evidence, we are satisfied that substantial evidence supports the decision of the Commission. Accordingly, we affirm.

Affirmed.

PITTMAN and WYNNE, JJ., agree.

*Bill E. Bracey, Jr.*, for appellant.

*Michael E. Ryburn*, for appellee.